IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED
JUN 2 3 2005
Michael N. Milby, Clerk

| AUBREY STEPHENS, | § | |
|---|---|---|
| TDCJ-ID NO 1089462, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-03-729 |
| | § | |
| HOUSTON POLICE DEPARTMENT, | § | |
| ET AL | § | |
| Defendants | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANT F. J. DOMINGUEZ'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, **AUBREY STEPHENS**, files this response to Defendant F. J. Dominguez's Motion

for Summary Judgment, and will show the court the following:

### I.
### STATEMENT OF FACTS

1.      Plaintiff's cause of action is premised on 42 USC § 1983. The Plaintiff was beaten by

Defendant Dominguez of the Houston Police Department, among others, and sustained several

injuries. The Plaintiff has several physical disfigurements and impairments as a result of the

incident. The Defendant has now moved for Summary Judgment. The Defendant's Motion has no

merit and must be denied.

2.      On August 21, 2001, at approximately 12:30 a.m., the Plaintiff was heading to his residence

at 5705 Brettshire, Houston, Texas from Hirsch Road. See Plaintiff's Affidavit,**Exhibit A**. Hirsch

Road is located in Northeast Houston, and in the pertinent area, is dark at night. Officer Sanchez

activated his emergency equipment in order to initiate a traffic stop on Mr. Stephens. See Defendant

Sanchez' statement of facts, paragraph 1.1. The Plaintiff beckoned on the officer to follow him to

a safe area. Plaintiff's Affidavit, paragraph 1. The Plaintiff was traveling at 20 mph or less.   Id.

The Defendant agrees that Plaintiff was traveling at "low speed". Defendant's Exhibit A.

3.      The Plaintiff parked his vehicle next to his residence, opened his car door, and displayed his empty hands to the officer. Plaintiff's **Exhibit A**, paragraph 2. The officer jerked the Plaintiff from Plaintiff's vehicle while using profanities. Id. Officer Sanchez and another officer then commenced to beat Plaintiff with their feet, fists, and weapons while calling for additional back up. Plaintiff' Affidavit paragraph 4. The beating by Officer Sanchez and the back up officers including Officer Dominguez who struck Plaintiff in the back and Sampson lasted for approximately half an hour. The Plaintiff was hit on the head. **Exhibit B**- Affidavit of Sandy Marie Griffin. One officer grabbed the Plaintiff's head and slammed it against a car port. Id. The Plaintiff was brutally beaten.    Id at paragraph 4. The Plaintiff bled. Id at paragraph 4. The Plaintiff was denied medical attention when the ambulance arrived. Id at paragraph 5.

4.      While the beating was going on, a crowd gathered and was yelling "Stop". "He is not doing anything". Affidavit of Arthur Hernandez,**Exhibit C**. The Plaintiff was beaten with "billy clubs". He did not resist or even try to defend himself.    Id. The officer did not allow the ambulance to get near the Plaintiff. Id. at paragraph 6. The Plaintiff was hit on the back with a nightstick and the officers choked him. Affidavit of Glenda Edmunson,**Exhibit E**. No resistance was offered by the Plaintiff. One officer shot the Plaintiff with a taser gun.    Id. at paragraph 4. Blood was spewing out of the Plaintiff's body.    Id. at paragraph 6. The squad vehicle, not the ambulance, took the Plaintiff to LBJ Hospital. Id.

6.      The ambulance arrived but was waived away. Plaintiff's **Exhibit A**, paragraph 7. **Exhibit B**, paragraph 5, **Exhibit C**, paragraph 6. There is no dispute that the Plaintiff suffered severe injuries. See **Exhibit G**, LBJ Hospital Medical Records excerpts and Ben Taub Hospital Records excerpts, Exhibit H. See also photograph of the Plaintiff, **Exhibit I**, 1-3. See also Defendant G. S.

Sanchez's Motion for Summary Judgement, paragraph 6.1.

## II.
## MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

7.　　　Under Federal Rules of Civil Procedure 56 (c), summary judgment is proper when the

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). <u>See also</u> *Celotex Corp vs*

*Catrett*, 477 US 317, 322-23 (1986). *Anderson vs Liberty Lobby, Inc.*, 477 US 242, 251-252 (1986).

The district court must resolve all reasonable doubts about the facts in favor of the nonmovant. *Hom*

*vs Squane*, 81 F. 3d 969, (10th Cir. 1996). *Pochia vs NYNEX Corp.*, 81 F. 3d 275, 277 (2d Cir.

1996). *Irby vs Bittick*, 44 F. 3d 949, 953 (11th Cir. 1995). The court must draw all justifiable

inferences in favor of the nonmovant. *Bodenheimer vs PPG Industries, Inc.* 5 F. 3d 955, 956 (5th

Cir. 1993). Defendant's burden is not satisfied by "some metaphysical doubt as to material facts,

conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged

factual dispute", or "only a scintilla of evidence." *Little vs Liquid Air Corp.,* 37 F. 3d 1069, 1075

(5th Cir. 1994) (en banc) (summary judgment is not disfavored in any particular type of case); <u>see</u>

*Anderson vs Liberty Lobby, Inc.*, 477 US 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986), at 247-48;

*Wallace*, 80 F.3d at 1047; *Douglass vs United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)

(citing *Forsyth vs Barr*, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 US 871 (1994)).

## III.
## SUMMARY JUDGMENT EVIDENCE

8.1　　　Plaintiff submits the following documents in his response to Defendant's Motion.

　　　　**A.**　　　Affidavit of Aubrey Stephens.

　　　　**B.**　　　Affidavit of Sandy Marie Griffin.

**C.**     Affidavit of Arthur Hernandez.

**D.**     Affidavit of Brandon Smith.

**E.**     Affidavit of Glenda Edmunson.

**F.**     Affidavit of James Stephens.

**G.**     LBJ Hospital Medical Records excerpts.

**H.**     Ben Taub Medical Records excerpts.

**I.**     Photographs of the Plaintiff post-arrest.

8.2     Plaintiff objects to the following documents submitted by Defendant Dominguez:

**a)     Defendant Exhibit A- Incident Report 1**

Plaintiff objects to this evidence because it is a defective duplicate. The left edge of the pages of the report has been cut off either by design or by error. The duplicate does not accurately reproduce the original. Federal Rule of Evidence Section 1001.4. Since a duplicate is admissible as an original unless a genuine question is raised as to the authenticity, and Plaintiff has raised this objection, Defendant's Exhibit A is not admissible as a questionable duplicate. Fed. R. Evidence Section 1003.

8.3     Furthermore, the evidence is not admissible as a public record and does not pass the hearsay test of Fed. R. Evidence Section 803 or Section 804. The author of the report is not identified, and the author does not state how he acquired the knowledge of the incident to fit within one of the hearsay exceptions.

**b)     Defendant's Exhibit C- Misdemeanor Indictment and Pleas for Resisting Arrest Charge**

8.4     These are public records and must be certified as correct in accordance with Rule 902 of the Federal Rules of Evidence or testified to be correct by a witness who has compared it with the original. Fed. R. Evidence 1005. The records were not certified and are inadmissible hearsay. The

records do not qualify for exception under the hearsay rule of Fed. R. Evidence 803 and should not be considered by the court.

**c)   Exhibit D- Attachment to Affidavit of Terry A. Bratton**

8.5    Plaintiff objects to the documents because nothing states that the records are kept in the regular course of business under Fed. R. Evidence 803 (b).   Accordingly, Plaintiff objects to "Employee Resume", "Houston Police Academy" records of training, and any other attachment beyond Officer Bratton's affidavit as inadmissible records.

### III.
### ESSENTIAL ALLEGATIONS

9.    The Defendant's Motion for Summary Judgment appears to center on the theory that the force used on the Plaintiff was necessary.  The Defendant further alleges that there is no liability against the City of Houston absent deliberate action and that Officer Dominquez is entitled to qualified immunity.

10.    Plaintiff's causes of action are premised on 42 USC Section 1983, and violations of the Fourth and Fourteenth Amendments to the United States Constitution.  The Plaintiff states that the force used by Defendant police officers, including Defendant Dominguez, was unreasonable, unnecessary, and excessive.   As a result of the conduct, Plaintiff sustained serious injuries. Defendant officers also denied Plaintiff medical care. Furthermore, Plaintiff asserts that the training provided the officers was deficient.

11.    **42 USC SECTION 1983 CLAIM**

The elements of a Fourth Amendment cause of action for excessive force during the course of arrest and apprehension at to an individual are that the individual 1) suffered some injury 2) which resulted from force that was clearly excessive 3) the excessiveness of which was objective unreasonable. *Heithschmidt vs City of Houston*, 490, US 386, 396-97, 109 S. Ct Element 1865,

1871-72 (1989).

12.      Element Number 1 of the cause of action is not in dispute (See Defendant's Motion Section

6.1). At dispute, and what creates a genuine issue of material fact for trial by jury is whether or not

the force used was excessive and unreasonable. Because the last two (2) elements are fact driven,

the Plaintiff will recite the events of August 21, 2001.

13.      The Plaintiff was flagged down by a Houston Police Officer patrol vehicle between 12:30

and 1:00 a.m. in the 10300 block of Hirsch Road in the Northeast portion of the city of Houston city

limits. Affidavit of Aubrey Stephens, (**Exhibit A**). The area is largely uninhabited , and very dark

at night. Upon being aware of the police vehicle, the Plaintiff beckoned on the officer to follow him

to an area of the nearby subdivision that has light where his mother incidentally resides. Id. The

Defendant's Motion for Summary Judgement's Exhibit A narrative supports this version of events

under "Officer's Actions". The narrative states that the "vehicle fled at low speed". Upon arriving

at his mother's residence, the Plaintiff parked his vehicle, raised his hands and remained in the

vehicle, **Exhibit A**. At this time officer Sanchez was irritated and shouted profanities at the Plaintiff

and told him to step out of the vehicle. Plaintiff requested the opportunity to take off his seatbelt.

Plaintiff's affidavit at paragraph 1. Officer Sanchez did not give Plaintiff such a chance and pulled

the Plaintiff from his (Plaintiff's) vehicle, and, with other officers, commenced immediately to beat

the Plaintiff. Id. The Plaintiff offered no resistance to the officer's command. Id. The officer

commanded the Plaintiff to go to the front of his car. Id. As the Plaintiff proceeded, he was hit in

the back with a weapon by Officer Dominguez. Id. The Plaintiff was severely beaten and suffered,

inter alia, wrist fracture. Id.

14.1     The Plaintiff claims asserts violation of 42 USC Section 1983. The source of the right for

claims against governmental officials depends on the Plaintiff's status at the time officials used

force. The Fourth Amendment applies to "seized" individuals and prohibits the used of unreasonable force. *Graham vs Conner*, 490 US 386, 394-95 (1989),  accord *County of Sacramento vs Lewis*, 118 S. Ct. 1708, 1715 (1998).   Whether police officers have violated the Forth Amendment during an investigation or arrest depends upon the resolution of two issues: (1) In using force, did officials "seize" the suspect within the meaning of the Fourth Amendment?  Graham, 490 US at 395-96 and (2) Was the force objectively unreasonable?  Id.  If officers both seized the Plaintiff and used objectively unreasonable force, then the plaintiff has stated a claim under the Fourth Amendment. If no seizure occurred, then the use of force in not actionable under the Fourth Amendment; the force, however, might be actionable under the Fourteenth Amendment.   See generally *County of Sacramento vs Lewis*, 118 S. Ct. 1708, 1715 (1998).

14.2    An officer seizes an individual when the officer by means of physical force or show of authority has in some way restrained the liberty of the individual. *Terry vs Ohio*, 392 US 1, 19 n. 16 (1968).  An officer also seizes an individual when a reasonable person would have believed that he was not free to leave and the person in fact submitted to the assertion of authority. *California vs Hodari*, 499 US 621, 628 (1991).  Finally, a governmental termination of freedom of movement through means intentionally applied constitutes seizure of an individual. *Brower vs County of Inyo* 489 US 593, 597 (1989) (use of roadblock to stop fleeing motorist constitutes seizure).

15.    **UNREASONABLE FORCE STANDARD**

15.1    To determine if officers used unreasonable force is a fact specific inquiry using the Fourth Amendment standard of unreasonableness.  The Supreme Court held in *Tennessee vs Garner*, 471 US 1 (1985) that the use of deadly force was objectively unreasonable.  Id at 11-12.  The fact of this case is that a police officer, who had reason to believe that a burglary had just occurred, commanded the fleeing suspect to stop.  When the suspect did not stop, the police officer shot and killed him.

The court held that under these circumstances, the shooting was unjustified. The court reasoned that:

> "[I]f the suspect threatens the officer with a weapon or there is probable cause to
> believe that he has committed a crime involving the infliction or threatened infliction
> of serious physical harm, deadly force may be used if necessary to prevent escape,
> and if, where feasible, some warning had been given." Id. In short, the suspect posed
> no danger to the officer or the community (burglary does not involve the infliction
> of "serious physical harm")." Id at 11.

15.2    The reasonable force standard requires a balancing of interests, evaluating the circumstances

present at the time the officers act, allowing the officers some deference because they often make

"split second judgments". *Graham vs Connor*, supra. at 141. The reasonableness standard of

inquiry is an objective one. Plaintiffs do not need to prove that the officers acted in bad faith. Id.

The Supreme Court articulated three factors in determining the reasonableness of force, (1) "the

severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of

the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest

by flight." Id at 397.

### IV.
### ANALYSIS

**16.    DEFENDANT DOMINGUEZ USED UNREASONABLE FORCE**

There is no dispute that the Plaintiff was a "seized" individual at the moment officer Sanchez

activated his emergency lights.  Even assuming arguendo that the Plaintiff was not a "seized"

individual at this time, the Plaintiff became a seized individual when he believed, after bringing his

vehicle to a stop, that he was not free to leave.  Thus, the Fourth amendment applies to the Plaintiff

and prohibits the used of unreasonable force. *Graham vs Connor*, supra.  The issue is, whether or

not the force used was unreasonable and excessive.  See *Heitschmidt vs City of Houston*, 961 F. 3d

834 (5th Cir. 1998).  As stated previously, the analysis requires a balancing of interests in light of the

circumstances.  *Graham*, supra.  Such balancing requires the inquiries articulated below.

## 17.1   THE SEVERITY OF THE CRIME

The Plaintiff did not commit a crime.  He simply beckoned on Officer Sanchez to follow him

to a safe area.  Officer Sanchez, with a badge and a gun investing him with all powers super human,

felt slighted and was irritated by the Plaintiff's failure to stop immediately even at the dark area.

There is no evidence whatsoever that the Plaintiff refused to stop or was attempting to flee.  Even

the City of Houston Police Department's incident report (Defendant's Exhibit A) states that the

Plaintiff fled "at low speed".  This statement alone is couched in contradiction.  Persons "fleeing"

from police officers do not "flee at low speed".  Page 1 of Defendant's Exhibit A even classifies the

offense as "minor".  Thus, the unreasonable force balancing analysis on count one is in favor of the

Plaintiff.

## 17.2   DID THE PLAINTIFF POSE AN IMMEDIATE THREAT TO THE SAFETY OF OFFICER DOMINGUEZ?

Defendant's Exhibit A states on page 1 that the Plaintiff brought his vehicle to a stop.  Thus,

the vehicle was not used as a weapon.  Defendant's Exhibit A which does not identify the writer and

is otherwise objected to as a competent summary judgment evidence states that the Plaintiff refused

to exit the vehicle.  At the same time, the Plaintiff swung a beer bottle at the officers.  It is difficult

to comprehend how even assuming arguendo that is the case, why two (2) set of darts were fired at

the Plaintiff who was still in his vehicle.  How can a person sitting inside a vehicle pose danger to

an officer with his weapons drawn?  Even assuming arguendo again that the cut off report (left side

missing words and incomplete) reproduced as Exhibit A by the Defendant is correct, nothing in the

report suggests that the Plaintiff posed an immediate threat to Officer Sanchez, Officer Dominguez and other officers. According to their version, the Plaintiff exited the vehicle and started running. Allegedly, the Plaintiff ran up a driveway behind a parked vehicle. The Plaintiff allegedly grabbed on to the tailgate of a parked vehicle and held onto the truck for leverage. Sgt Casko then struck the Plaintiff's arm and shoulder. The Plaintiff then released his grip from the vehicle and was handcuffed. Where is the danger to the Officers? The incident report begs the question.

18.    The Plaintiff offers the following plausible chain of events.

Upon arriving at his mother's residence, the Plaintiff parked his vehicle, raised his hands and remained in the vehicle. At this time Officer Sanchez was irritated and shouted profanities at he Plaintiff. Plaintiff' Affidavit at paragraph 3. Any delay in exiting the vehicle was due to a pending request that the officers watch his hands while he took off his seat belt. The request was denied. As Officer Sanchez pulled the Plaintiff from his (Plaintiff's) vehicle, he and other officers commenced immediately to beat the Plaintiff. Id. The Plaintiff offered no resistance to the officer's command. Id. The Officer commanded the Plaintiff to go to the front of his car. Id. As the Plaintiff proceeded, he was hit in the back with a weapon. Id. The Plaintiff was severely beaten without any provocation.

19.    Officer Sanchez, another Defendant, has submitted an affidavit about the events of August 21, 2001. He admits that the Plaintiff traveled a few blocks before coming to a stop, admitting that the Plaintiff did not engage in anything dangerous at this time. See Defendant's Exhibit B. Officer Sanchez's only gripe with the Plaintiff is that the Plaintiff failed to obey his and Sgt. Casko's official command by refusing to exit his vehicle. Thus, he admits that the Plaintiff did not pose an immediate threat. *Graham vs Conner*, supra. Officer Sanchez appears to justify his conduct by stating that the Plaintiff ran from his vehicle to a vehicle parked under a carport next to a home

"adjacent to the scene" and that he pursued the Plaintiff. First, Officer Sanchez committed perjury by the very nature of his affidavit. A visit to the incident scene reveals that the carport he mentions is in the Plaintiff's home. To be "adjacent to the scene" implies that the Plaintiff's vehicle was parked across from his mother's home. Assuming that the Plaintiff pulled in ans stopped on the wrong side of the street, then the Plaintiff parked next to the carport, which is essentially next to the alleged truck that the Plaintiff ran to and certainly not greater than five (5) feet approximately from the Plaintiff's vehicle. Thus, the Plaintiff did not run and Defendant Sanchez did not "pursue" the Plaintiff.

20.     The next analysis is whether or not the Plaintiff's alleged grab on the tailgate of the truck qualifies for the "actively resisting arrest or attempting to evade arrest by flight" element of *Graham*, supra. The Plaintiff asserts that it is not. As stated in the affidavit of witnesses, the Plaintiff did not offer any resistance and could not have fled the scene because Bucknell and Brettshire, which form a "T" were blocked by police cars (Affidavit of Sandie Marie Griffin, paragraph 2, **Exhibit B**). Medical attention was not provided to the Plaintiff. For Officer Sanchez to state that the Plaintiff did not complain of any pain and that he did not observe any physical injuries begs the question. Apparently this lack of observation on his part justified the continued beating. Harris County Medical Records (**Exhibit H**) lists open wounds, pain, deformity, left shoulder, left wrist fracture as injures sustained by the Plaintiff. See LBJ Medical Records ( **Exhibit G**). Hospital records further lists distal radial fracture (**Exhibit G**), shoulder pain post assault, ankle pain post trauma, status post assault, wrist pain, status post assault with oblique fracture of the distal radius. The Plaintiff received operation on the wrist. The Plaintiff attaches herewith, as Exhibit, photographs of his injures. Yet Defendant did not notice these injuries (**Exhibit I**). Officer Sanchez and Officer Dominguez cannot be trusted or believed and neither is entitled to summary judgment. The force

used was excessive and unreasonable under the circumstances. Furthermore, Defendant has not explained to the satisfaction of the court why ambulance personnel were ordered to leave. Plaintiff has sustained his burden or created a fact issue on the medical care violation that precludes summary judgment.

21.     Defendant attempts to justify that use of force by attaching inadmissible criminal court proceedings showing that the Plaintiff was found guilty of resisting arrest. Criminal proceedings are collateral proceedings and do not justify or support a finding in a civil case.

22.     The Defendant has not challenged Plaintiff's Fourteenth Amendment claim and hence the issue will not be addressed in this response.

**V.**
**MUNICIPAL LIABILITY**

23.     The Motion for Summary Judgment is captioned "Defendant F. J. Dominguez' Motion for Summary Judgment/Order". Yet the Motion has a "No Municipal Liability Absent Deliberate Action Attributable to the Municipality". See Defendant's Motion for Summary Judgment § 7.1 - 7.4. Plaintiff is unable to ascertain why these Sections are in Officer Dominguez' Motion. Because these Sections are regurgitated in the City of Houston's Motion for Summary Judgment, they are considered redundant here and will be addressed in the City of Houston's Motion for Summary Judgment.

**SUIT IN OFFICIAL CAPACITY**

24.     Defendant argues that the Plaintiff has failed to state whether he is suing Officer Dominguez in his individual capacity or official capacity as a Houston Police Officer. Failure to expressly state that the official is being sued in his individual capacity may be construed as an intent to sue the defendant only in his official capacity. See e.g. *Wells v Brown*, 891 f. 2d 591, 592 (6th cir. 1989). See also *Nix v Norman*, 879 f. 2d 429, 431 (8th cir 1989). Furthermore, a Plaintiff need not plead

expressly the capacity in which he is suing a defendant to state a cause of action under §1983. *Biggs v Meadows*, 66 F.3d 56-60 (4th cir. 1995). Instead, the substance of the Plaintiff's claim, the relief sought, and the cause of proceedings determine the nature of a §1983 suit when a plaintiff fails to allege capacity. Id.

25.    Whatever capacity Defendant Dominguez is being sued, there is no qualified immunity available in an official capacity suit. Furthermore, the Supreme Court has held in *Owen v City of Independence*, 445 US 622 (1980) that a local government defendant has no qualified immunity from compensatory damages liability. The Plaintiff's case does not seek an injunction or any other equitable damages but compensatory damages. See Plaintiff's First Amendment Complaint, paragraph

26.    Sliced either in official capacity or individual capacity, Defendant Dominguez is not entitled to qualified immunity.

### VI.
### TRAINING OF HOUSTON POLICE OFFICERS

27.    Defendant again address the training element of Plaintiff's claims against the City of Houston, It is clear that this Motion was not well thought off, and appears to be a regurgitation of previously filed Motions cut and pasted for Defendant Officer Dominguez. In fact, the Motion for Summary Judgment of Defendant Dominguez was lumped with that of the City of Houston. Since the same claims are made in the City of Houston's Motion for Summary Judgment, Plaintiff's response as to the training claim will be directed to the City of Houston while addressing the City's Motion for Summary Judgment.

## VII.
## CONCLUSION

28.     The Defendant has failed to justify that the force applied on the Plaintiff, causing extensive injuries, was necessary in a traffic stop.  Defendant Dominguez is not entitled to summary judgment.

29.     **WHEREFORE, PREMISES CONSIDERED**, Plaintiff **AUBREY STEPHENS** requests the court to deny Defendant F. J. Dominguez' Motion for Summary Judgment and issue a Scheduling Order to allow the case to proceed to discovery and eventual trial.  There are several fact issues for the trier of fact.  Plaintiff prays for general relief.

Respectfully submitted,

**OKON J. USORO, P. C.**

By: _____

O. J. Usoro
SBN: 00789691
12000 Westheimer Rd., Ste. 300
Houston, Texas 77077
Tel: (281) 920-2000
Fax: (281) 920-2139

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was duly served upon L. Renee Lowe, Esq., City of Houston Legal Department, 900 Bagby, 4th Floor, Houston, TX 77002 via certified mail no. 7004 1160 0005 3530 9985 on this the 20th day of June , 2005



_____
O. J. Usoro

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AUBREY STEPHENS,                      §
TDCJ-ID NO 1089462,                   §
    *Plaintiff*        §
                        §
VS.                                   §    CIVIL ACTION NO. H-03-729
                        §
HOUSTON POLICE DEPARTMENT,            §
ET AL                                 §
    *Defendants*       §

## <u>AFFIDAVIT OF AUBREY STEPHENS</u>

*STATE OF TEXAS*     §
*COUNTY OF HARRIS*   §

    **BEFORE ME**, the undersigned authority on this day personally appeared, **AUBREY  STEPHENS**,

who, by me duly sworn makes the following statement:

    "I am **AUBREY STEPHENS**, over eighteen years of age and capable of making this affidavit. I state

that the following is true and correct to the best of my knowledge, belief, and recollection.

    I currently reside at 5705 Brettshire, Houston, Texas 77016.

1.    On the night of August 20, 2001, I was driving down Hirsch St. towards my home on Brettshire St. around 12:30 a.m.  I was signaled to pull over by a City of Houston police car.  I beckoned to the police officer to follow me and complied as soon as possible by traveling no more than 20 mph to where I could safely park my car.  My destination was my house, a short two blocks away.

2.    Once I parked my car next to the curb and out of traffic, I immediately opened my door and displayed my hands to show the Officer I did not have a weapon.

3.    The Officer, now identified as Officer Sanchez, exited his vehicle (which he had parked behind me) and approached me, berating me in a loud voice with profanities for not pulling over in a quicker manner.  I still had my seatbelt on and asked for permission to take it off before I could get out.  As I took it off, he pulled me from the car, he demanded to know, "Didn't you see the fucking light come on?!"  He directed me to go to the front of my car and I did.  As I walked, another officer had arrived and hit me on the back with a weapon.  I staggered.

4.    At this point, Officer Sanchez initiated, what I believe was, attempted murder and pulled me from the car and beat me with fists, feet, and weapons.  He was joined by other "backup" officers.  There was a total of 6-8 officers attacking me.  I was hit by a taser gun more than once at close range.  I tried to yell for help and to alert my family thinking if they came out the abuse might stop.  There was so much



commotion that my neighbors had woke up and were outside screaming for the officers to stop beating me.

5.    I was screaming in pain and asking for help. The beating started by my car and ended about 30 minutes later at the back door of my house where my semi-conscious body was handcuffed and my feet and hands were hogtied. I was then dragged across my yard and driveway and the officers deposited me on the side of the street.

6.    Officer Sanchez stood over my mangled form and said "If you would have just pulled over, it would have been a single traffic violation!

7.    At this point, I was put into the police car for about 35 minutes. During this time, an ambulance arrived at the scene but was waved away by Houston Police Officers. The officers told the EMT personnel to leave the scene.

8.    The City of Houston police officers transported me straight to Lyndon B. Johnson Hospital. At LBJ I was briefly examined and given a splint. I was then released into the custody of Houston Police Department.

9.    Once I was booked and in the Houston City Jail, I was examined by HPD Medical Department and referred to Ben Taub Hospital, Houston. At Ben Taub, I was thoroughly examined and X-Rays were taken. It was determined that my arm was broken and my shoulder dislocated. I remained at Ben Taub for medical care for four (4) days and then taken back to Harris County Jail.

10.   I was sentenced to ninety (90) days for "resisting arrest" and "evading arrest". I was neither charged nor convicted of any traffic offense(s), the reason the Officer Sanchez said I was pulled over in the first instance."

Further, Affiant sayeth not.

Affiant, AUBREY STEPHENS

**SUBSCRIBED AND SWORN** to before me on this 17th day of June, 2005.

Notary Public in and for the State of Texas
My comm. exp.: 4/12/08

LIGIA SALAMANCA
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
APRIL 12, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AUBREY STEPHENS, §
TDCJ-ID NO 1089462, §
    *Plaintiff* §
     §
VS. §    CIVIL ACTION NO. H-03-729
     §
HOUSTON POLICE DEPARTMENT, §
ET AL §
    *Defendants* §

## AFFIDAVIT OF SANDY MARIE GRIFFIN

*STATE OF TEXAS* §
*COUNTY OF HARRIS* §

**BEFORE ME**, the undersigned authority on this day personally appeared, **SANDY MARIE GRIFFIN**, who, by me duly sworn makes the following statement:

"I am **SANDY MARIE GRIFFIN**, over eighteen years of age and capable of making this affidavit. I state that the following is true and correct to the best of my knowledge, belief, and recollection. I currently reside at 7607 Cabot, Houston, Texas 77016.

1.    On the night of August 20, 2001, I was in my house at 5609 Brettshire in Houston, Texas when I was awakened by lights outside. I woke up and went to check the house and also woke up my boyfriend at the time, Mr. Rodney Smith, to come outside with me.

2.    When I got outside, I saw the corner street blocked with City of Houston police cars. Some police cars came from Bucknell St. while others pulled up from Brettshire Street. Bucknell runs East to West and Brettshire runs North and South.

3.    I recall seeing several officers beating Mr. Aubrey Stephens on the head. There were up to eight (8) officers at a time beating Mr. Stephens. Mr. Stephens was literally crying and asking for help. The officers would not have mercy on him. I recall one of the officers grabbing his head and hitting it against the car port. They were hitting him, kicking him, and beating him with their sticks. This lasted for what seemed 30-45 minutes.

4    I spoke to one of the officers, a white female, and asked her what was going on and why they were beating him so brutally. She said they were trying to restrain him. I asked her if they needed that many officers and so much force to do so when Mr. Stephens wasn't even fighting or resisting. She said all neighbors should stay in their yards becuase this was official police business. She kept saying Mr. Stephens was not hurt. It was obvious he was because he was bleeding.

5.    When the ambulance arrived it was obvious Mr. Stephens needed medical attention. Medical attention was denied by the officers. I asked a black male EMT from the ambulance why they would not care for Mr. Stephens. He said that the officers had told him and his team to leave and denied them access to Mr. Stephens. The ambulance left without Mr. Stephens.

6.    I heard Mr Stephens cry in pain about his arm being hurt. Then I saw Mr. Stephens being dragged to a police car. He was crying."

Further, Affiant sayeth not.

                            _Sandy Marie Griffin_
                            Affiant, SANDY MARIE GRIFFIN

**SUBSCRIBED AND SWORN** to before me on this 20th day of June , 2005.



    JOYCE MARIE OLIVER
    NOTARY PUBLIC
    STATE OF TEXAS
    MY COMM. EXP. 08-18-2008

                        _Joyce Oliver_
Notary Public in and for the State of Texas
My comm. exp.: 8-18-2008

FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUBREY STEPHENS, | § | |
| TDCJ-ID NO 1089462, | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-03-729 |
| | § | |
| HOUSTON POLICE DEPARTMENT, | § | |
| ET AL | § | |
| *Defendants* | § | |

## AFFIDAVIT OF ARTHUR HERNANDEZ

| | |
|---|---|
| *STATE OF TEXAS* | § |
| *COUNTY OF HARRIS* | § |

**BEFORE ME**, the undersigned authority on this day personally appeared, **ARTHUR HERNANDEZ**, who, by me duly sworn makes the following statement:

"I am **ARTHUR HERNANDEZ**, over eighteen years of age and capable of making this affidavit. I state that the following is true and correct to the best of my knowledge, belief, and recollection.

I currently reside at 5610 Brettshire, Houston, Texas 77016.

1.  On the night of August 20, 2001, I awoke to loud sirens. I knew it was close proximity because the sirens were so loud. When I went outside my house, a few neighbors were already out there looking towards the house across the street where Aubrey Stephens resided with his mother. The crowd was yelling "Stop, he's not doing anything", "Stop!". I saw the scene which they were looking at.

2.  By the time I started watching, Ms. Stephens was outside his vehicle. There were many City of Houston squad cars. He was tackled between his brother's truck and the house. I saw several officers start beating him with their "billy clubs". The officers beat him consecutively and excessively. I don't think he or any person deserved such a beating.

3.  Stephens was curled in a fetal position. It looked like he was trying to grab the tailgate, trying to pull himself under the truck, and breathe.

4.  I did not see Mr. Stephens fight with or attack the officers. Mr. Stephens did not even try to defend himself.

5.  Mr. Stephens brother, James Stephens, came out of the house. The officers threatened to take him to jail if he did not go back inside the house.

6.  I saw an ambulance approach but the officers wouln't let anyone near Mr. Stephens to give him medical care.

Further, Affiant sayeth not."

_____
Affiant, **ARTHUR HERNANDEZ**

**SUBSCRIBED AND SWORN** to before me on this 18 day of June , 2005.

_____
Notary Public in and for the State of Texas
My comm. exp.:  9/16/2007

SANDY MARIE GRIFFIN
Notary Public, State of Texas
My Commission Expires 09-16-2007

FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUBREY STEPHENS,<br>TDCJ-ID NO 1089462,<br>　　*Plaintiff* | §<br>§<br>§<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. H-03-729 |
| HOUSTON POLICE DEPARTMENT,<br>ET AL<br>　　*Defendants* | §<br>§<br>§<br>§ | |

### AFFIDAVIT OF BRANDON SMITH

*STATE OF TEXAS* 　　　　　§
*COUNTY OF HARRIS* 　　　§

**BEFORE ME**, the undersigned authority on this day personally appeared, **BRANDON SMITH**, who, by me duly sworn makes the following statement:

"I am **BRANDON SMITH**, over eighteen years of age and capable of making this affidavit. I state that the following is true and correct to the best of my knowledge, belief, and recollection.

I currently reside at 5702 Brettshire, Houston, Texas 77016.

1. On the night of August 20, 2001, I was in the house watching TV, when I heard loud sirens. I went outside and I saw Mr. Stephens parking at his house. I saw a male officer go to Mr. Stephens' car door, pointing at him with an object (could have been a gun or a club) and a flashlight.

2. The officer pulled Mr. Stephens out of the car and more officers arrived at this time and surrounded him. Several officers struck Mr. Stephens. The officers continued to beat, hit, and kick Mr. Stephens, who offered no resistance.

3. I recall one officer jumping off the bumper of Mr. Stephens' brother's truck and falling on him, like a wrestler jumping off the ropes to fall on an opponent.

4. I recall one female officer macing Mr. Stephens.

5. Mr. Stephens did not give the officers any reason to beat him. He did not provoke, fight, or even defend himself.

6. Even after handcuffing Mr. Stephens, the officers kept hitting his back with a nightstick and choking him. Based on the severity of the beating, I believed the officers intended to kill Mr. Stephens."

Further, Affiant sayeth not.

　　　　　　　　　　　　　　　　　*Brandon Smith*
　　　　　　　　　　　　　　　　　Affiant, **BRANDON SMITH**

**SUBSCRIBED AND SWORN** to before me on this ___ day of June, 2005.

SANDY MARIE GRIFFIN
Notary Public, State of Texas
My Commission Expires 09-16-2007

　　　　　　　　　　　　　　　　　*Sandy Marie Griffin*
　　　　　　　　　　　　　　　　　Notary Public in and for the State of Texas
　　　　　　　　　　　　　　　　　My comm. exp.: 9/16/2007



FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUBREY STEPHENS, | § | |
| TDCJ-ID NO 1089462, | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-03-729 |
| | § | |
| HOUSTON POLICE DEPARTMENT, | § | |
| ET AL | § | |
| *Defendants* | § | |

### AFFIDAVIT OF JAMES STEPHENS

*STATE OF TEXAS*          §
*COUNTY OF HARRIS*     §

**BEFORE ME,** the undersigned authority on this day personally appeared, **JAMES STEPHENS**, who, by me duly sworn makes the following statement:

"I am **JAMES STEPHENS**, over eighteen years of age and capable of making this affidavit. I state that the following is true and correct to the best of my knowledge, belief, and recollection.

I currently reside at 5705 Brettshire, Houston, Texas 77016.

1.     On the night of August 20, 2001, I was living with my brother, Aubrey Stephens, and my mother at 5705 Brettshire, Houston, Texas 77016.

2.     I heard sirens and looked out my window and saw my brother, Aubrey, inside his car and a male officer poking at him with a nightstick while telling Aubrey something.

3.     The officer pulled Aubrey out of the car. I saw several more officers come and surrounded my brother to where I couldn't see him anymore. But several feet and hands were moving towards the center of the crowd, my brother.

4.     I saw my brother try to pull himself under my truck (which was right by the house door). They still kept beating him. One officer tasered him and others maced him.

5.     I did try to go outside to ask the officers to stop beating my brother. An officer told me to get back inside the house if I did not want to go to jail.

6.     I went back inside the house and did not look outside anymore."

Further, Affiant sayeth not.

Affiant, **JAMES STEPHENS**

**SUBSCRIBED AND SWORN** to before me on this _18th_ day of _June_, 2005.

Notary Public in and for the State of Texas
My comm. exp.: _9/16/2007_


SANDY MARIE GRIFFIN
Notary Public, State of Texas
My Commission Expires 09-16-2007

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUBREY STEPHENS, | § | |
| TDCJ-ID NO 1089462, | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-03-729 |
| | § | |
| HOUSTON POLICE DEPARTMENT, | § | |
| ET AL | § | |
| *Defendants* | § | |

### AFFIDAVIT OF GLENDA EDMUNDSON

*STATE OF TEXAS* §
*COUNTY OF HARRIS* §

**BEFORE ME**, the undersigned authority on this day personally appeared, **GLENDA EDMUNDSON**, who, by me duly sworn makes the following statement:

"I am **GLENDA EDMUNDSON**, over eighteen years of age and capable of making this affidavit. I state that the following is true and correct to the best of my knowledge, belief, and recollection. I currently reside at 8606 Wileyvale, Houston, Texas 77016.

1. On the night of August 20, 2001, I was leaving my job on Hirsch St. a few streets down from 5705 Brettshire in Houston, Texas where I was living with Aubrey Stephens, my boyfriend at the time.

2. Aubrey Stephens decided to head home while I closed up. I was to follow him later. I saw a City of Houston squad car turn the lights on when he was turning onto Calgary St (right before Brettshire).

3. By the time I got home Mr. Stephens was already handcuffed and restrained. He was screaming "Why are you doing me like this?". Several officers were on top of him beating him. I recall several male officers and one white female. The officers were beating Mr. Stephens who offered no resistance.

4. One officer shot him with a taser gun. It didn't work the first time so they shot him again. Mr. Stephens was beaten brutally. I asked them to stop and they wouldn't. I took down as many names and badge numbers as I could.

5. When the ambulance came by, EMT personnel did not have a chance to look at Mr. Stephens. They got out of the ambulance but were told to leave by the police officers. EMT left without providing medical care to Mr. Stephens.

6. The officers searched my vehicle, which was what Mr. Stephens was driving. The beating was so severe that Mr. Stephens' blood was spewing out of his body during the incident. Mr. Stephens was dragged into the squad car with severe injuries and I followed him to LBJ Hospital.

Further, Affiant sayeth not."

_Glenda Edmonson_
Affiant, **GLENDA EDMUNDSON**

**SUBSCRIBED AND SWORN** to before me on this ___18___ day of June , 2005.



SANDY MARIE GRIFFIN
Notary Public, State of Texas
My Commission Expires 09-16-2007

_Sandy Marie Griffin_
Notary Public in and for the State of Texas
My comm. exp.: _9/16/2007_

THE STATE OF TEXAS

COUNTY OF *HARRIS*

### AFFIDAVIT

Before me, the undersigned authority, personally appeared *Carolyn Cleveland*

_____
(FULL NAME)

who being by me duly sworn, deposed as follows:

My name is *Carolyn Cleveland*

I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein

stated:

I am the custodian of the records of *Lyndon B. Johnson Hospital*

*5656 Kelley St, Houston, TX 77026*
(NAME OF FACILITY AND ADDRESS)

Attached here are ___*15*___ pages of records from the medical records of:

*Stephens, Aubrey ; M.R.# 315·19·53·5*
(NAME OF PATIENT)

Hospital stay period: ___*8/21/01*___
(ADMISSION AND DISCHARGE DATE)

These said pages of records are kept by said Hospital in the regular course of business, and it was the regular course of business of said Hospital for an employee or representative of said Hospital, with knowledge of the act, event, condition, opinion or diagnosis recorded, to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The record attached hereto is the original or exact duplicate of the original and no other documents exist on the files for the above named person, which pertain to the admission and discharge, noted above.

*Carolyn Cleveland*
_____
(SIGNATURE)

SWORN TO AND SUBSCRIBED before me on this *21st* day of *September*, ~~199~~ *2001*

_____
Notary Public in and for the STATE OF TEXAS

Maria O. Lopez
Notary Public
State of Texas
My Commission Expires
May 25, 2003

SEAL

_____
(Printed Name)

My Commission Expires: _____

| TIME OF ARRIVAL | PATIENT'S LAST NAME, FIRST, MI. | | DOB | AGE | SEX | RACE | MEDICAL RECORD NO |
|---|---|---|---|---|---|---|---|
| 010921  0151 STEPHENS | AUBREY | | 10121963 | 037Y | M | BLACK | |

STREET

WHERE PICKED UP: 10300 BUCKNELL

| CITY HOUSTON | CTY | ST. TX | ZIP | CONDITION ON ARRIVAL: FAIR   NONE/NOT KNOWN | BROUGHT IN BY: HPD | TRIAGE TO: 7070  S  S  ( ) _ |

MECHANISM OF INJURY: / CHIEF COMPLAINT.  OPEN WOUNDS   LEFT   SHOULDER
PAIN   LEFT   WRIST
DEFORMITY   LEFT   WRIST

Treatment Prior To Arrival   RESTRAINED

Transferred from another Institution:

E.C. No. N012330008

Triage Comments (Sign Entry)
HPD STATES PT WAS UNDER PCP.COMBATI
VE AT SCENE.DART ON L THIGH/LCHEST
628247J Q

Allergies
UNKNOWN

Nursing Assessment/Comments (Time/Sign Entry)

| VITAL SIGNS | | | | | PEDI |
|---|---|---|---|---|---|
| Time | B/P | Pulse | Resp | Temp | Ht/Wgt |
| 0151 | 114/78 | 148 | 24 | | 97.2 |

IMMUNIZATIONS (PEDI):
☐ UTD  ☐ OTHER  TETANUS (date)

| Time & ID | Physician Orders | ID # | Attending Time/Initial | Nurse Time/Initial | Clerk Time/Initial |
|---|---|---|---|---|---|
| | Medical Record  ☑ Inpatient  ☐ Outpatient | | | | |
| | EKG | 26396 | | | |
| | Retriage to suture room   DLo | 26396 | | done | |
| | Xray of L shoulder, wrist, | | | | |
| | L ankle | | | | |
| | facial series   done | | | 0230 | |
| | MDS, ETOH | | | | |
| 4:30 am | Toradol 60mg IM. | 27178 | 4:30 w/ | | |
| 7:30 | Vicodin ii po x i now | 27203 | 073o/DE | | |

Final Diagnosis:
1. S/P assault   3.
2.   4.

DISPOSITION DATE/TIME   Jail
08/81/91 0700   ☐ HOME  ☐ EXPIRED  ☐ TRANSFER TO:

☐ AMA (1)  ☐ CWA (2)  (TIME/INITIAL) (3)   ☐ ADMIT  SERVICE  UNIT   CONDITION ON DISCHARGE ☐ GOOD ☑ FAIR ☐ POOR ☐ CRITICAL

NURSE SIGNATURE/NUMBER   PHYSICIAN SIGNATURE/NUMBER   PHYSICIAN SIGNATURE/NUMBER
EC 8Zabaire 27178

PATIENT ID

315 19 53 5   1233

STEPHENS, AUBREY
M B 10/12/63
N E XP

CONSENT FOR TREATMENT:
WE HEREBY GRANT PERMISSION TO THE AUTHORITIES OF THE HARRIS COUNTY HOSPITAL DISTRICT AND THE MEDICAL STAFF TO PERFORM SUCH EMERGENCY MEDICAL, SURGICAL AND/OR PSYCHIATRIC PROCEDURES THEY DEEM NECESSARY AND TO RELEASE INFORMATION CONTAINED IN THIS REPORT TO THE ATTENDING FAMILY PHYSICIAN AND/OR LAW ENFORCEMENT AGENCIES WHEN NECESSARY

CONSENTIMIENTO PARA TRATAMIENTO.
DOY MI CONSENTIMIENTO A LAS AUTORIDADES DEL DISTRITO DE HOSPITALES DEL CONDADO DE HARRIS Y AL PERSONAL MÉDICO PARA LLEVAR A CABO LOS PROCEDIMIENTOS DE EMERGENCIAS, QUIRÚRGICOS Y/O PSIQUIÁTRICOS QUE CREAN NECESARIOS Y A DAR INFORMACIÓN CONTENIDA EN ESTE REPORTE AL MÉDICO DE LA FAMILIA Y/O A LAS AGENCIAS GUBERNAMENTALES CUANDO SEA NECESARIO

PATIENT OR NEAREST RELATIVE (MINOR'S SIGNATURE NOT VALID)   WITNESS/TRANSLATOR

Harris County Hospital District
EMERGENCY ROOM TRIAGE RECORD

Retention HR-4800-04

281675 (12/98)
Page 1 OF 2

HARRIS COUNTY HOSPITAL DISTRICT
EMERGENCY CENTER: DISCHARGE INSTRUCTIONS
CENTRO DE EMERGENCIA: INSTRUCCIONES PARA SER DADA DE ALTA

| DIAGNOSIS | MEDICATIONS |
|---|---|
| ① _Tazer Removal_ | ① _Keflex 500mg · T po qid x10_ |
| ② _distal Radial Fracture ⓛ_ | ② _Vicodin T - TT po po q4-6° PRN po_ |

**INSTRUCTIONS**

Physician

① _Meds as prescribed_

② _F/u at ortho clinic Thursday · 8/23/01_

☐ None   Physician Signature/FIRMA DEL MEDICO: _____ ID #: _____

Social Services: _____
_____ _ß_

☐ None   Social Work Signature/FIRMA DEL TRABAJADOR (A) SOCIAL: _____ ID #: _____

Nursing _____

| ACTIVITY/ACTIVIDAD | FOLLOW-UP/CONTINUAR SU TRATAMIENTO | DISCHARGE STATUS |
|---|---|---|
| ☒ NORMAL  ☐ BED REST<br>NORMAL    REPOSO EN CAMA<br>☐ OTHER<br>OTRO | ☐ BEN TAUB CLINIC ____<br>CLINICA DE BEN TAUB<br>☐ COMMUNITY CLINIC____<br>CLINICA DE LA COMUNIDAD<br>☐ PRIVATE PHYSICIAN____<br>DOCTOR PARTICULAR<br>☐ PUBLIC HEALTH ____<br>CLINICA DE SALUD PUBLICA<br>☒ OTHER<br>OTRO _LBJ ORTHO  8/23/01_<br>_8:00 AM_ | ☒ Ambulatory with   ☐ Self  ✓ office<br>☒ Wheel chair       ☐ Family<br>☐ Stretcher         ☐ Friend<br>                    ☐ Ambulance<br>Instructions/Prescriptions given to:<br>☒ Patient/Paciente<br>☐ Family/Familia<br>☐ Friend/Amistad |
| DIET/DIETA<br>☐ NORMAL  ☐ CLEAR LIQUIDS<br>NORMAL    LIQUIDOS CLAROS<br>☐ OTHER<br>OTRO | | |

☒ The above instructions/prescriptions have been explained to
me and I understand them.

☐ LAS INSTRUCCIONES/PAPEL DE MEDICINAS
MENCIONADAS ARRIBA ME HAN SIDO EXPLICADAS Y LAS
HE COMPRENDIDO.

PATIENT'S SIGNATURE/FIRMA DE PACIENTE:
_(signature)_

NURSE'S SIGNATURE & ID #/FIRMA DE ENFERMERA:
_Cheryl Baline Sal 8708_
_Page RN_

Harris County Hospital District

**EMERGENCY ROOM DISCHARGE RECORD**

PATIENT ID

_(faint) 5  1233_

STEPHENS, AUBREY
_H R N012330008_
_H E  XP_

Retention
HR-4800-
281675 (1)
Page 2 of

| STEPHENS | AUBREY |
|---|---|
|  | N012330008 |
| STEPHENS | AUBREY |
|  | N012330008 |

## PHYSICAL EXAM

| (-) | (+) | Constitutional | (-) | (+) | Genitourinary |
|---|---|---|---|---|---|
| | | Vital signs | | | examination of scrotal contents |
| | | general appearance | | | examination of penis |
| | | **Eyes** | | | digital rectal exam of prostate |
| | | conjunctivae/lids | | | exam of external genitalia/vagina |
| | | pupils/irises | | | examination of urethra |
| | | funduscopic (discs, posterior segment) | | | examination of bladder |
| | | **Ears, Nose, Mouth, Throat** | | | cervix |
| | | external ears and nose | | | uterus |
| | | otoscopic examination | | | adnexa/parametria |
| | | hearing | | | **Lymphatic (2 or more areas)** |
| | | nasal mucosa, septum and turbinates | | | neck |
| | | lips, teeth and gums | | | axillae |
| | | oropharynx | | | groin |
| | | **Neck** | | | other |
| | | neck | | | **Musculoskeletal** |
| | | thyroid | | | gait and station |
| | | **Respiratory** | | | digits/nails |
| | | respiratory effort | | | exam of ≥ 1 of the following (circle) |
| | | percussion of chest | | | 1. Head & Neck   4. Left upper ext. |
| | | palpation of chest | | | 2. Spine, Ribs & Pelvis   5. Right lower ext. |
| | | auscultation of lungs | | | 3. Right upper ext.   6. Left lower ext. |
| | | **Cardiovascular** | | | inspection/palpation |
| | | palpation of heart | | | range of motion |
| | | auscultation of heart | | | stability |
| | | carotid arteries | | | muscle strength and tone |
| | | abdominal aorta | | | **Skin** |
| | | femoral arteries | | | inspection |
| | | pedal pulses | | | palpation |
| | | extremities for edema/varicosities | | | **Neurologic** |
| | | **Breasts** | | | cranial nerves |
| | | inspection of breasts | | | deep tendon reflexes |
| | | palpation of breasts/axillae | | | sensation |
| | | **Gastrointestinal (abdomen)** | | | cerebellar |
| | | examination of abdomen | | | **Psychiatric** |
| | | examination of liver and spleen | | | judgment and insight |
| | | examination for hernia | | | orientation to time, place & person |
| | | examination of anus, perineum and rectum | | | recent and remote memory |
| | | occult blood test | | | mood and affect |

(+) Positive Findings          (-) Negative/Normal Findings

Positive/Pertinent Findings:

(L) Shoulder Not able to elevate

(L) Wrist dislocaters .  (L) Upper Extremity Edema

+ pulses.

Physician Signature & ID:  [signature]  Q778   Date & Time: 8/21/01 6:00

Harris County Hospital District

**EMERGENCY ROOM PHYSICAL EXAMINATION**

Retention:          281679/6/9

# HARRIS COUNTY HOSPITAL
## Radiology Services Consultation
Medical Records Emergency Patient's Copy

**NAME:** STEPHENS, AUBREY          **MR#:**   315-19-53-5

**DATE OF BIRTH:**   10/12/1963          **ORD#:** 90003

**SEX: M**          **AGE: 37Y**          **ORDERING LOCATION:**   LBJ EMERGENCY SHOCK ROOM

**ROOM / BED:**   6520-          **ACCESSION NUMBER:**   5262753

**ORDERING DR.:**   SUMAIYA ZOBAIRI M.D.          **ATTENDING DR.:**   BRETT BUCHMILLER M.D.

---

### ***Final Report***

**DEPARTMENT: LBJ EMERGENCY RADIOLOGY**
**CPT CODE:  73610**
**Examination(s):   NEC          0045–      ANKLE 3VW MIN  - LEFT**
**Aug 21 2001 2:45AM (End Tracking Time)**

**CLINICAL INDICATIONS:**   PAIN, STATUS POST TRAUMA, STATUS POST ASSAULT

**IMPRESSION:**  1.      No acute post-traumatic abnormality of the ankle.

**DISCUSSION:**   AP, mortise and lateral view of the left ankle performed in the shock room demonstrates no fracture, subluxation or dislocation in the ankle.

AM/CS/MT/jln

This report was dictated by a Radiology Resident/Fellow.   The images and the content of the report were personally reviewed by an attending physician who agreed with these findings.

REPORTED BY:          ARMEEN MAHVASH,M.D.          READING DATE:          Aug 22 2001 9:28A
STAFFED BY:          CARL SANDLER, M.D.          SIGNED DATE:
APPROVED BY:          CARL SANDLER,M.D.          SIGNED DATE:          Aug 24 2001 10:39A
Transcribed by / Date:          NJM on Aug 22 2001  9:44A
Approved Electronically by / Date: Aug 24 2001 10:39A

## Radiology Services Consultation
### Medical Records Emergency Patient's Copy

| | | | |
|---|---|---|---|
| **NAME:** | STEPHENS, AUBREY | **MR#:** | 315-19-53-5 |
| **DATE OF BIRTH:** | 10/12/1963 | **ORD#:** | 90002 |
| **SEX: M** | **AGE: 37Y** | **ORDERING LOCATION:** | LBJ EMERGENCY SHOCK ROOM |
| **ROOM / BED:** | 6520- | **ACCESSION NUMBER:** | 5262752 |
| **ORDERING DR.:** | SUMAIYA ZOBAIRI M.D. | **ATTENDING DR.:** | BRETT BUCHMILLER M.D. |

### ***Final Report***

**DEPARTMENT: LBJ EMERGENCY RADIOLOGY**
**CPT CODE: 73100**
**Examination(s):** NEC       0034-    **WRIST 2VW  LEFT**
                        **Aug 21 2001 2:45AM (End Tracking Time)**

**CLINICAL INDICATIONS:**   PAIN, STATUS POST ASSAULT

**IMPRESSION:**  1.      Displaced oblique fracture of the distal radius.

**DISCUSSION:**   AP and lateral views of the left wrist demonstrates an oblique fracture of the distal radius with one-half shaft's width ulnar and volar displacement. There is radial angulation of the distal fracture fragment. There is approximately 2 cm of shortening.

AM/CS/MT/jln

This report was dictated by a Radiology Resident/Fellow. The images and the content of the report were personally reviewed by an attending physician who agreed with these findings.

| | | | |
|---|---|---|---|
| REPORTED BY: | ARMEEN MAHVASH,M.D. | READING DATE: | Aug 22 2001 9:27A |
| STAFFED BY: | CARL SANDLER, M.D. | SIGNED DATE: | |
| APPROVED BY: | CARL SANDLER,M.D. | SIGNED DATE: | Aug 27 2001 9:28A |
| Transcribed by / Date: | NJM on Aug 22 2001 9:42A | | |
| Approved Electronically by / Date: Aug 27 2001 9:28A | | | |

THE STATE OF TEXAS

BUSINESS RECORDS AFFIDAVIT

COUNTY OF HARRIS

BEFORE ME, the undersigned authority, personally appeared _Lesia Nixon_, who being by me duly sworn, deposed s follows:

My name is _Lesia Nixon_, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the Custodian of the Records of Ben Taub General Hospital. Attached hereto are _11_ pages of records for _Stephens Mulvey_ kept by Ben Taub General Hospital in the regular course of business.

It was the regular course of business of Ben Taub General Hospital for an employee or representative of Ben Taub General Hospital, with knowledge of the act, event, condition, opinion of diagnosis recorded to make the record: or to transmit information thereof to be included in such record: and the record was made at or near the time or reasonably soon thereafter. The record attached hereto is the original or exact duplicate of the original and no other documents exist on the files for the above named person, which pertain to the admission and discharge noted above.

SIGNED this _22nd_ day of _October_, 2001.

_Lesia Nixon_
AFFIANT

SUBSCRIBED AND SWORN TO before me on this _22_ day of _October_ 2001, To certify which witness my hand and seal of office.

_Ray A. Garcia_
NOTARY PUBLIC in and for the STATE OF TEXAS

SEAL

RAY A. GARCIA
Notary Public, State of Texas
My Commission Expires
DECEMBER 08, 2004

_RAY A. GARCIA_
Print name of notary

My commission expires _12-08-04_



## DISCHARGE SUMMARY

### BEN TAUB GENERAL HOSPITAL

Poor Quality Original

**ADMISSION DATE:** 08/21/01

**DISCHARGE DATE:** 08/24/01

**DICTATOR:** MATTHEW WASSERMAN, M.D.

**ADMITTING TEAM:** Orthopaedic Surgery

**ADMISSION DIAGNOSIS:** Left radius fracture.

**DISCHARGE DIAGNOSIS:** Left radius fracture status post open reduction and internal fixation.

**OPERATION/PROCEDURES:** The patient underwent open reduction and internal fixation of left radius fracture on 08/23/01. That operative report is dictated separately.

**CONSULTATIONS:**

**HISTORY:** This is a 36-year-old African American male who was involved in an altercation with the Sheriff's Department. He sustained blunt trauma to his left forearm. X-rays revealed a 100% displacement of distal 1/3 diaphyseal radius fracture. Plan was made to admit the patient for open reduction and internal fixation. He was neurovascularly intact in the extremity.

**PHYSICAL EXAMINATION:**

**LABORATORY DATA:**

**HOSPITAL COURSE:** The patient was admitted. He was stable. Preoperatively, he was placed in a splint. His hand remained neurovascularly intact. He was taken to the operating room when OR time allowed, and his left radius was fixed with open reduction and internal fixation. Postoperatively, he received 24 hours of perioperative antibiotics, and he was tolerating his pain well on oral pain medicine. On postoperative day one, he was afebrile and tolerating a regular diet. He was, therefore, discharged to the Sheriff's Department custody on 08/24/01 in good condition, regular diet.

**DISPOSITION:** Discharged to Sheriff's Department custody.

---

31519535

STEPHENS, AUBREY

PAGE 1 OF 2

DISCHARGE SUMMARY

**DISCHARGE SUMMARY**

**DISCHARGE CONDITION:** Good.

**DISCHARGE INSTRUCTIONS:**

**DISCHARGE MEDICATIONS:** Darvocet-N 100 1-2 tablets p.o. q. 4 hours p.r.n. pain and Keflex 500 mg p.o. q.i.d. for seven days.

**DISCHARGE DIET:**

**DISCHARGE ACTIVITY:**

**APPOINTMENT/FOLLOWUP:** He will follow up in the Orthopaedic Surgery Postoperative Clinic on Friday, 09/07/01 at 8:30 a.m.

MW/TL064
D: 08/24/01  13:13:00
T: 09/04/01  10:06:44
07060/MEDQ

MATTHEW WASSERMAN, M.D.

Poor Quality
Original

31519535

STEPHENS, AUBREY

PAGE 2 OF 2

DISCHARGE SUMMARY

$C^{ext}$
N
DK: 812401

# OPERATIVE REPORT

## BEN TAUB GENERAL HOSPITAL

**DATE:** 08/23/01                          **DICTATOR:** MATTHEW WASSERMAN, M.D.

**SURGEON:** WASSERMAN, M.D.          **ANESTH.:**

**1ST ASST.:** IRVIN SAHNI, M.D.          **2ND ASST.:**

**ATTENDING PHYSICIAN:** ELDON G. HOPKINS, M.D.

**PREOPERATIVE DIAGNOSIS:**     Left distal one-third radius diaphyseal fracture.

**POSTOPERATIVE DIAGNOSIS:**     Same, status post open reduction internal fixation.

**PROCEDURE:**     Open reduction internal fixation of left distal radial diaphyseal fracture.

**ANESTHESIA:**     General.

**ANESTHESIOLOGY STAFF:**     Patel.

**COMPLICATIONS:**     None.

**TOURNIQUET TIME:**     90 minutes.

**ESTIMATED BLOOD LOSS:**     10 cc.

**INTRAVENOUS FLUIDS:**     2 liters lactated Ringer's.

**URINE OUTPUT:**     None.

**IMPLANTS:**     One eight hole 3.5 mm LCDC plate.

**DISPOSITION:**     Extubated and taken to the recovery room in stable condition.

**FINDINGS:**

**INDICATIONS FOR PROCEDURE:** Mr. Stephens is a 37-year-old male who was involved in an altercation with the police department. He sustained blunt trauma to his left forearm. X-rays revealed a completely displaced distal diaphyseal left radius fracture and plan was made to fix the fracture with open reduction internal fixation. The patient understood the risks and benefits of the procedure, including bleeding, infection, damage to nerves or blood vessels, malunion/nonunion, stiffness of the wrist or elbow, failure of the

**PAGE 1 OF 2**
**STEPHENS, AUBREY**                          **UNIT #:** 31519535

## OPERATIVE REPORT

hardware, possible need for future surgery. He understood these risks and benefits and wished to proceed with surgery and, therefore, signed the informed consent form for the procedure.

**PROCEDURE IN DETAIL:** The patient was identified in the preoperative holding area. The left arm was exposed as the operative site. He received 2 grams of Ancef intravenously preoperatively. He was taken to the operating room, placed on the operating room table. After adequate induction of general endotracheal anesthetic, a tourniquet was placed high up on the left arm and his left hand and arm were prepped and draped in the usual sterile surgical fashion and placed on an arm board. We approached the fracture from the volar side using the approach of Henry, volar approach of the forearm. The incision was made over the radius and carried down to the level of fascia sharply. Using blunt dissection, the interval between the flexor carpi radialis and the brachioradialis was developed. The radial artery and the superficial branch of the radial nerve were identified and protected throughout the rest of the procedure. The fracture site was identified and subperiosteal dissection was used to expose the fracture site. Fracture hematoma was curetted and irrigated and the fracture was reduced anatomically with reduction forceps and held provisionally with 0.062 K-wire. Next, an interfrag lag screw was placed using AO technique and then an eight hold 3.5 mm LCDC plate was placed and holes were filled using AO technique, obtaining eight cortices of purchase proximal to the fracture and six cortices of purchase distal to the fracture. Intraoperative hard copy x-rays were obtained which revealed anatomic reduction of the fracture and excellent position of all hardware. The wound was irrigated copiously with normal saline and closed. The skin was closed with 2-0 Vicryl interrupted sutures and staples for the skin. A sterile dressing was applied and a sugar tong splint was placed. Plan postoperatively will be for 24 hours of perioperative antibiotics and then discharge home when the patient is comfortable.

MW/TL122
D: 08/23/01   14:02:00
T: 08/29/01   07:25:40
06942/MEDQ

MATTHEW WASSERMAN, M.D.



9618-2001 #1



9618-2001 #2



9618-2001 #3



9618-2001 #4



9618-2001 #5

9618-2001 #6



9618-2001 #7



9618-2001 #8

PLAINTIFF'S
EXHIBIT
I 2

**9618-2001 #9**





**9618-2001 #10**

**9618-2001 #11**



**9618-2001 #12**



PLAINTIFF'S
EXHIBIT

I3